## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Robert E. Morris, (R-71372), | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 21 C 1188 |
| v. | ) | |
| | ) | Hon. Thomas M. Durkin |
| | ) | |
| Anthony Willis, Warden, | ) | |
| Menard Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Petitioner Robert E. Morris, a prisoner at Menard Correctional Center, brings this *pro se* habeas corpus action under 28 U.S.C. § 2254 challenging his 2013 murder and attempted armed robbery convictions from the Circuit Court of Cook County. (Dkt. 1.) For the reasons below, this Court denies the petition and declines to issue a certificate of appealability.

## I.    Background[1]

### A.    The Murder and Attempted Armed Robbery

On April 3, 2009, seventy-nine-year-old Robert Sanders (the victim) was sitting in the driver seat of his blue Chevrolet outside a currency exchange in Calumet City, Illinois, when a man entered the front passenger side of his car and attempted to rob him. *People v. Morris*, 2015 IL App (1st), 140846-U, ¶¶ 5, 19. The offender, later identified as Petitioner, fired multiple gunshots during the attempted robbery, causing the victim severe injuries, respiratory failure, and

---

[1] The following facts are drawn from the state court record, (Dkt. 21), and state appellate court opinions on direct review, *People v. Morris*, 2015 IL App (1st) 140846-U, and postconviction appeal, *People v. Morris*, 2020 IL App (1st) 162723-U. The state court's factual findings are presumed correct unless Petitioner rebuts this presumption by clear and convincing evidence, *Hartsfield v. Dorethy*, 949 F.3d 307, 309 n.1 (7th Cir. 2020) (citing 28 U.S.C. § 2254(e)(1); *Perez-Gonzalez v. Lashbrook*, 904 F.3d 557, 562 (7th Cir. 2018)), and Petitioner has not met this burden.

other significant health issues. *Id.* at ¶¶ 5, 41. The victim remained in a nursing home for the next two years before eventually succumbing to his wounds on April 30, 2011. *Id.* at ¶¶ 5, 15. The cause of death was identified as aspiration pneumonia due to multiple gunshot wounds, and his manner of death a homicide. *Id.* at ¶ 41. Petitioner was subsequently charged with murder and attempted armed robbery. *Id.* at ¶ 5.

**B.    Petitioner's Trial**

***The State's Case***

At trial, the State presented the testimony of William Binns, an eyewitness who was standing in line at the currency exchange when Petitioner attacked the victim. *Id.* at ¶ 18. Binns testified that he was looking out the window to check on his car when he saw a tall, dark-skinned man in a gray hooded sweatshirt enter the front-passenger side of the car that was parked next to his, and begin to struggle with the older man seated in the driver seat. *Id.* He described the victim's car as a tan Buick but later acknowledged the victim's car was a blue Chevrolet. *Id.* at ¶ 19.

Binns explained that the struggle went on for a few minutes when he heard two or three gunshots. *Id.* at ¶ 18. At that point, Binns observed Petitioner exit the car, close the front-passenger door, and walk quickly past the currency exchange. *Id.* Binns testified that he saw the shooter's face as he passed. *Id.*

Following the incident, Binns left the currency exchange to check on his car and saw the victim had been shot. *Id.* He spoke with officers from the Calumet City Police Department at the scene. *Id.* Two weeks later, he identified Petitioner in a lineup. *Id.* at ¶ 19. He subsequently testified before a grand jury and again identified Petitioner as the shooter. *Id.* He also made an in-court identification at trial. (Dkt. 21-16, p. 205.)

2

Several police officers and other emergency personnel also testified for the State. Calumet City paramedic Joseph Brazzale testified that he responded to the crime scene and found the victim sitting in the driver's seat of a car with blood on his hands and shirt. *Morris*, 2015 IL App (1st) 140846-U, ¶ 21. The victim told Brazzale that someone tried to rob him and shot him. *Id.*

Calumet City police officer George Jones testified that he photographed the crime scene and dusted for fingerprints. *Id.* at ¶ 23. He found fingerprints on the passenger door of the victim's car. *Id.* The officer lifted prints from the interior and exterior front passenger window and the exterior front passenger door frame, and submitted the fingerprint lifts to the Illinois State Police crime lab for testing. *Id.*; (Dkt. 21-17, p. 28-35.)

Calumet City police detective Casey Erickson testified that he received notice that the fingerprints that had been submitted to the crime lab matched Petitioner. *Morris*, 2015 IL App (1st) 140846-U, ¶ 37. He issued a BOLO (be on the lookout) with Petitioner's photograph. *Id.* A high school resource officer observed Petitioner walking near the school where he worked and alerted the Calumet City Police Department. *Id.* at ¶ 25. Petitioner was subsequently arrested. *Id.*

Detective Erickson testified that he spoke with Petitioner after he was taken into custody. *Id.* at ¶ 38. The detective informed Petitioner of the armed robbery and asked him if he had been in the area that day. *Id.* Petitioner told the detective that he may have been around there, but denied knowing anything about an armed robbery. *Id.* Detective Erickson then told Petitioner that they were going to place him in a lineup, to which Petitioner asked, "if the old man was okay." *Id.* The detective explained that, at that point, Petitioner had only been informed that there had been an armed robbery; he had not been given details about the victim or that he had been hurt. *Id.*

Calumet City police sergeant Kevin Rapacz testified regarding his visit with the victim the day after Petitioner was taken into custody. *Id.* at ¶ 33. He brought with him a photo array. *Id.* Petitioner's counsel objected to the State introducing testimony about any identification the victim made from the photo array, arguing it was hearsay and violated the defendant's right to confront witnesses. *Id.* The State responded that it would not be eliciting the substance of the conversation between the sergeant and the victim; rather the testimony would be offered to show the course of the investigation. *Id.* The trial court overruled defense counsel's objection, rejecting the argument that the mention of a photo array would lead to the inference that the victim made some kind of identification because the inference could go "both ways." *Id.*

Sergeant Rapacz explained that the victim was alert when he visited, but could not speak and could communicate only with his hands and head. *Id.* at ¶ 34. The sergeant testified that he went to the hospital for the purpose of having the victim view a photo array containing six photos. *Id.* His testimony proceeded as follows:

> Q: And who was contained in that photo spread?
>
> A: Robert Morris.
>
> Q: Did you in fact, present [the victim] with that photo spread?
>
> A: Yes.
>
> Q: After doing so, what did you do?
>
> A: We responded to the police department to continue our investigation of Robert Morris.

(Dkt. 21-17, p. 191.) The photo array was admitted into evidence. *Morris*, 2015 IL App (1st) 140846-U, ¶ 47.

Back at the police station, Sergeant Rapacz and Detective Erickson conducted a physical lineup that included Petitioner. (Dkt. 21-17, p. 191-92.) Sergeant Rapacz testified that Binns identified Petitioner from the lineup. *Morris,* 2015 IL App (1st) 140846-U, ¶ 34.

On cross-examination, defense counsel sought to elicit testimony from Sergeant Rapacz regarding identifications made by other witnesses, Jack Spinks and his deceased wife Effie Sheppard. (Dkt. 21-17, p. 205.) The trial court ruled that, like the photo array, the sergeant could testify that others viewed the lineup as part of the course of investigation, but not the result of the viewing. *Id.* at 208-09. The jury was then told by Sergeant Rapacz that Spinks and Sheppard also viewed the lineup. *Id.* at 211.

Following the lineup, Detective Erickson spoke with Petitioner for a second time. *Morris,* 2015 IL App (1st) 140846-U, ¶ 34. The detective advised Petitioner that someone had identified him in the lineup as being involved in the armed robbery. (Dkt. 21-17, p. 228.) Petitioner, who still had not been provided information regarding the details of the victim, asked "if the old man was able to come [] and pick him out of the lineup." *Id.* Detective Erickson explained that he then told Petitioner the armed robbery involved a shooting and that someone had been shot. *Id.* Petitioner hunched over, put his head down, and said, "it wasn't cold-blooded." *Id.*

The State also presented an expert in latent fingerprint analysis, Frank Senese. *Morris,* 2015 IL App (1st) 140846-U, ¶ 43. Senese testified that he is a latent print group supervisor for the Illinois State police. *Id.* at ¶ 44. At the time of the investigation, he received several latent prints from the Calumet City Police Department. *Id.* He entered one of the prints recovered from

the exterior of the front-passenger side window of the victim's car into the Automatic Fingerprint Identification System (AFIS).[2] *Id.* The database matched the print to Petitioner. *Id.*

Senese followed up the AFIS match by requesting Petitioner's fingerprint card from the Bureau of Identification for the Illinois State Police so that he could conduct a comparison between Petitioner's fingerprints and three of the prints recovered from the exterior of the passenger-side window of the victim's car. (Dkt. 21-18, p. 94-97.) Following his comparison analysis, he notified the Calumet City Police Department that the fingerprints belonged to Petitioner. *Id.* at 97.

Following Petitioner's arrest, Senese re-compared the latent prints to another set of Petitioner's ink prints. *Morris,* 2015 IL App (1st) 140846-U, ¶ 45. His analysis resulted in the same conclusion: the three lifts from the exterior passenger window of the victim's car matched the prints for Petitioner's left pinky, ring, and middle fingers. *Id.* Specifically, he found 15 points of comparison on Petitioner's pinky finger, 44 points of comparison on his ring finger, and 25 points of comparison on his middle finger. (Dkt. 21-18, p. 100-11.) As for a smudge at the bottom of one of the prints, Senese acknowledged that he could not say whether it was left by Petitioner or whether it was a glove print. *Morris,* 2015 IL App (1st) 140846-U, ¶ 45.

***Petitioner's Case***

Before Petitioner called his first witness, the State renewed an earlier objection it had made regarding the identification testimony of Sheppard. (Dkt. 21-18, p. 172.) Sheppard had made an identification of someone other than Petitioner in the physical lineup. *Id*. She passed away before trial, but memorialized her identification in an affidavit. *Id*. In the affidavit, Sheppard asserted that:

---

2 Senese explained that AFIS is a search tool that allows law enforcement to search latent fingerprint impressions in a database of criminal and civil files to determine if there is a match in the system. (Dkt. 21-18, p. 88.)

she identified the man in lineup holding "number 1"; on the car ride home from the lineup, she and her husband, Spinks, revealed to each other that they had each identified the same man in the lineup as the shooter; and she confirmed her identification to the Calumet City Police and State's Attorney in a subsequent interview. (Dkt. 21-20, p. 140-41.) The State argued the identification was inadmissible hearsay for which there was no exception permitting its admission. (Dkt. 21-18, p. 172.) The trial court agreed that Sheppard's identification was barred as inadmissible hearsay, finding Petitioner's argument that the affidavit would be admissible under a common law residual hearsay exception unavailing.[3] *Id.* at 175.

Petitioner later made an offer of proof as to why Sheppard's affidavit was admissible as substantive evidence. *Morris,* 2015 IL App (1st) 140846-U, ¶ 51. He contended he could prove up Sheppard's identification via the testimony of: (1) Sergeant Rapacz and Detective Erickson, who conducted the lineup; (2) Spinks, to whom Sheppard revealed they identified the same individual; and (3) the two police officers that interviewed Sheppard regarding her affidavit. *Id.* Petitioner further argued the affidavit should be admissible for purposes of impeachment, claiming the affidavit supported the theory that the officers were biased against him. *Id.* The trial court stood by its earlier ruling that the affidavit was not admissible under any hearsay exception, nor did it go to the bias of the officers. *Id.*

Petitioner called Spinks as his first witness. *Id.* at ¶ 53. Spinks testified that he was in the currency exchange when the armed robbery occurred. *Id.* He heard the gunshots and saw some people moving around in a car, but could not see anything else. *Id.* Additionally, he could not see

---

3  The Federal Rules of Evidence contain a residual hearsay exception. *See* Fed. R. Evid. 807. Illinois has not adopted this exception under the state's rules of evidence. *See People v. Neal*, 150 N.E.3d 984, 1009 (Ill. App. 2020).

the shooter's face when he walked past the currency exchange because his hood was covering his head. *Id.* Spinks saw only that the offender had a revolver in his right hand, on which he did not notice a glove. *Id.* Spinks did not believe he would be able to identify the offender in the lineup, but was asked to participate. *Id.* He identified someone other than Petitioner. *Id.*

Assistant State's Attorney (ASA) Andrea Grogan testified regarding her notes from her conversation with Detective Erickson following his interview with Petitioner. *Id.* at ¶ 57. Grogan acknowledged that she did not include Petitioner's question about the "old man" or statement that the shooting "wasn't cold-blooded" in the short, five-line summary of the case that she drafted for the bond hearing. *Id.*; (Dkt. 21-18, p. 199-200.) She explained it would have been the detective's job to document Petitioner's statements. (Dkt. 21-18, p. 200.)

Petitioner also called two expert witnesses, Robert Sanderson and Ken Moses. *Morris,* 2015 IL App (1st) 140846-U, ¶¶ 59-61. Sanderson was qualified in the field of video forensics. *Id.* at ¶ 59. He analyzed surveillance footage that captured the offender running down an alley after the shooting and noticed a dark band around the man's left wrist area. *Id.* He considered the dark band to be some type of "covering" on the left wrist.[4] *Id.*

Moses was qualified as an expert in forensic crime scene analysis and latent print identification and comparison. *Id.* at ¶ 61. He testified that one of the prints recovered from the victim's vehicle contained two smudge marks which he opined were glove prints that had been laid down after Petitioner left his fingerprints. *Id.*

---

4 Before Petitioner called his first witness, the State renewed its motion *in limine* to bar Sanderson from offering an opinion that the individual in the surveillance video was wearing a glove. *Morris,* 2015 IL App (1st) 140846-U, ¶ 49. The trial court did not rule on the motion because Petitioner's counsel responded that they would not be eliciting such an opinion from Mr. Sanderson. *Id.*

### *The State's Rebuttal*

The State called three witnesses in rebuttal, one of which was Officer Momcilo Plavsa, the school resource officer who identified Petitioner near school grounds after the BOLO had issued. *Id.* at ¶ 25. He testified that on the day of the lineup, he escorted high school student, Kelly Sellers, to the Calumet City Police Department to stand in the lineup as a filler.[5] *Id.* at ¶ 63. Sellers was positioned as number one in the lineup. *Id.*

### *Closing Arguments and Jury Verdict*

Petitioner's closing argument focused on the two theories he had advanced throughout trial—that this was a case of mistaken identity and that the officers were biased against him in their investigation. (Dkt. 21-20, p. 54-96.) He argued that once the officers matched the fingerprint on the victim's car to Petitioner, "they set out to build a case against him." *Id.* at 56.

In rebuttal, the State went through the evidence, from the victim's words to the paramedic after the shooting and Binns's identification, to the fingerprints on the victim's car and the forensic scientist's testimony, and emphasized to the jury that the victim "ha[d] spoken to [them] through the evidence." (Dkt. 21-20, p. 112-13.)

Following closing argument, defense counsel objected to the jury receiving the photo array with Petitioner's photograph. *Morris,* 2015 IL App (1st) 140846-U, ¶ 65. The trial court found the photo array relevant in light of Petitioner's bias argument that there was "a rush to judgment in the investigation," and ruled that it would be published to the jury. *Id.*

Petitioner was found guilty of murder, attempted armed robbery, and personally discharging a firearm that caused the death of another. *Id.* at ¶ 66. The sentencing court merged

---

5  Officer Plavsa explained that fillers are persons who make up the lineup outside of the suspect. (Dkt. 21-20, p. 34.)

9

Petitioner's murder and attempted armed robbery convictions, and sentenced him to an aggregate prison term of 80 years on the murder and firearm convictions. *Id.* at ¶ 2.

### C.    Petitioner's Direct Appeal

Petitioner, through counsel, appealed his convictions and sentence, raising six claims. *Id.* at ¶ 3. Two of those claims raised evidentiary challenges to the trial court's rulings on Sheppard's identification, Sergeant Rapacz's testimony, and the admission and publication of the photo array to the jury. *Id.* The state appellate court rejected Petitioner's arguments and affirmed the judgment of the trial court. *Id.* at ¶ 126.

Petitioner's counsel subsequently filed a petition for leave to appeal (PLA) to the state supreme court. (Dkt. 21-5.) The PLA reraised Petitioner's arguments regarding Sheppard's affidavit, the sergeant's testimony, and the photo array. *Id.* The Supreme Court of Illinois denied the PLA. *People v. Morris*, 48 N.E.3d 1095 (Table) (Ill. 2016).

### D.    Petitioner's Postconviction Proceedings

Following completion of direct review, Petitioner pursued postconviction relief. His *pro se* postconviction petition raised various grounds of ineffective assistance of trial and appellate counsel, and challenged the sufficiency of the evidence. (Dkt. 21-13.) He appealed the summary dismissal of his petition and was appointed counsel. (Dkt. 21-10.) Postconviction appellate counsel argued the single issue of ineffective assistance of direct appeal counsel for failing to raise a sufficiency challenge on direct review. *Id.* The state appellate court affirmed, *Morris*, 2020 IL App (1st) 162723-U, ¶ 1, and the state supreme court denied Petitioner's *pro se* postconviction PLA, *People v. Morris*, 163 N.E.3d 753 (Table) (Ill. 2021), which raised one claim challenging the State's evidence as insufficient to prove his guilt beyond a reasonable doubt. (Dkt. 21-6, p. 1-7.)

10

### E.    Petitioner's Habeas Corpus Petition

Petitioner now seeks habeas corpus relief in this Court. (Dkt. 1.) His petition raises numerous challenges to his criminal convictions that are organized according to which stage of his criminal proceedings the error allegedly occurred (*e.g.*, the investigation stage, the discovery stage, etc.). *Id.* at 7-30. Oftentimes, however, Petitioner raises multiple constitutional issues within a single claim, making his petition repetitive and difficult to follow.

In answering the petition, Respondent did a complete overhaul of Petitioner's claims, dropping their groupings and subheadings, and reorganizing them according to legal theory. (Dkt. 20, p. 13-14.) The reorganization further complicated matters, as it created an arduous maze through which the Court had to match up, as illustrated below, the claims in the parties' respective pleadings. Upon concluding this trek, however, the Court finds that Respondent's reorganization, albeit extensive, accurately reflects all the claims Petitioner raises in his habeas corpus petition, but in a more straightforward and streamlined manner. Petitioner appears to agree with this reorganization as he adopted Respondent's restructuring in his reply brief. (Dkt. 24, p. 5-9.)

Below, the Court lists Petitioner's original headings (*e.g.*, "Ground One: "State's Investigation"), and below each heading includes separate tables for each of the claims raised by Petitioner with a side-by-side comparison of the claim as identified by Respondent in his answer. Some tables include multiple issues because, as explained above, Petitioner often raised multiple issues, even if unrelated, within a single claim.

## GROUND ONE: "STATE'S INVESTIGATION" (Dkt. 1, p. 7.)

| *Massiah* Violation (Dkt. 1, p. 7.) | Respondent's Claim 5(a) |
|---|---|
| The police elicited Petitioner's incriminating statements, "it wasn't cold-blooded" and "how's the old man," after he had been charged and without counsel present in violation of the Sixth Amendment. (Dkt. 1, p. 7.) | The police elicited incriminating statements made by petitioner after he had been charged. (Dkt. 20, p. 14.) |

| Identification Suggestive (Dkt. 1, p. 7-10.) | Respondent's Claim 5(c) |
|---|---|
| Petitioner was convicted on the basis of eyewitness Binns's unreliable identification that was made during the unconstitutionally suggestive lineup. (Dkt. 1, p. 7-9.)<br><br>Trial counsel erred in handling the identification procedures in "3 different ways" (Dkt. 1, p. 8.)<br><br>(1) by failing to file a pretrial motion to suppress eyewitness Binns' identification, which was "vague, doubtful, and uncertain." (Dkt. 1, p. 7-10.)<br><br>(2) by failing to object to Binns's testimony regarding his identification made during the suggestive lineup. (Dkt. 1, p. 7.)<br><br>(3) by failing to preserve the aforementioned error (i.e., the unconstitutionality of the lineup procedure) in a posttrial motion, thereby forfeiting it for review. (Dkt. 1, p. 7-8.) | The police conducted an unduly suggestive lineup. (Dkt. 20, p. 14.)<br><br>**Respondent's Claim 1(a):**<br>Trial counsel was ineffective for failing to file a pretrial motion to suppress the lineup evidence. (Dkt. 20, p. 13.)<br><br>**Respondent's Claim 1(b):**<br>Trial counsel was ineffective for failing to object to the admissibility of Binns's testimony (Dkt. 2-, p. 13.)<br><br>**Respondent's Claim 1(d):**<br>Trial counsel was ineffective for failing to preserve the issue of the unconstitutionally suggestive lineup in a posttrial motion (Dkt. 20, p. 13.) |

| Lineup Suggestive (Dkt. 1, p. 10.) | Respondent's Claim 5(c) |
|---|---|
| The lineup procedures were also unconstitutionally suggestive because the police were upset Spinks and Sheppard did not identify Petitioner in the lineup. (Dkt. 1, p. 10.) | The police conducted an unduly suggestive lineup. (Dkt. 20, p. 14.) |

| | **Respondent's Claim 3(e)** |
|---|---|
| The trial court erred by refusing to allow Petitioner to cross-examine Detective Erickson about Sheppard's hearsay statements regarding her identification of the shooter. (Dkt. 1, p. 10.) | The trial court erred by not admitting hearsay statements showing that Sheppard had not chosen petitioner out of the lineup. (Dkt. 20, p. 13.) |

| **Lineup Without Counsel (Dkt. 1, p. 10-11.)** | **Respondent's Claim 5(b)** |
|---|---|
| Petitioner's conviction was obtained as a result of a lineup conducted in violation of the right to counsel and in violation of the right to due process because Petitioner was placed in a tainted and suggestive lineup after requesting counsel. (Dkt. 1, p. 10-11.) | The police denied petitioner access to counsel during the lineup. (Dkt. 20, p. 14.) |

## GROUND TWO: "DISCOVERY" (Dkt. 1, p. 11.)

| ***Brady* Violation (Dkt. 1, p. 11.)** | **Respondent's Claim 4(a)** |
|---|---|
| The State failed to disclose favorable evidence to the defense by not giving Petitioner the opportunity to subject an "unknown" fingerprint found in the victim's car to appropriate testing. (Dkt. 1, p. 11.) | The prosecution failed to disclose an "unknown" fingerprint to the defense. (Dkt. 20, p. 14.) |
| The trial court did not allow Petitioner to cross-examine Detective Erickson about Sheppard's hearsay statements regarding her identification of the shooter. (Dkt. 1, p. 11.) | **Respondent's Claim 3(e)**<br>The trial court erred by not admitting hearsay statements showing that Sheppard had not chosen petitioner out of the lineup. (Dkt. 20, p. 13.) |

## GROUND THREE: DEFENSE COUNSEL/PROSECUTOR/JUDGE (Dkt. 1, p. 12- 20.)

| **Counsel Denied: Appeal (Dkt. 1, p. 12.)** | **Respondent's Claim 2(a)** |
|---|---|
| Appellate counsel was constitutionally ineffective and effectively denied him his only appeal as of right by failing to raise on direct review that trial counsel was "derelict" in their duties by failing to: suppress the identification, object to the suggestive lineup procedures and Binns's testimony, and preserve "said claim" in a posttrial motion. (Dkt. 1, p. 12.) | Direct appeal counsel was ineffective for failing to raise the issue of trial counsel's ineffectiveness. (Dkt. 20, p. 13.) |

| Counsel Denied: Trial (Dkt. 1, p. 13-14.) | Respondent's Claim 1(e) |
|---|---|
| Petitioner was denied the Sixth Amendment's guarantee of the assistance of counsel "whenever necessary to assure a meaningful defense" as trial counsel failed to adequately defend Petitioner against Binns's unreliable testimony and the suggestive lineup procedure that was conducted in his case in the absence of counsel. (Dkt. 1, p. 13-14.) | Trial counsel was ineffective for failing to adequately defend petitioner at trial. (Dkt. 20, p. 13.) |

| Ineffective Assistance of Counsel: Failure to Investigate (Dkt. 1, p. 14-15.) | Respondent's Claim 1(c) |
|---|---|
| Petitioner's trial counsel was ineffective in failing to conduct a reasonable, pretrial investigation and call certain witnesses to testify at trial. (Dkt. 1, p. 14-15.) | Trial counsel was ineffective for failing to investigate and call certain witnesses to testify. (Dkt. 20. P. 13.) |

| Ineffective Assistance of Counsel: Trial Counsel (Dkt. 1, p. 15-16.) | |
|---|---|
| Petitioner's trial counsel was constitutionally ineffective for: | |
| (1) failing to file a pretrial motion to suppress the witness identification made during the "highly suggestive one to one photographic show ups."[6] (Dkt. 1, p. 16.) | **Respondent's Claim 1(a)** <br> Trial counsel was ineffective for failing to file a motion to suppress the lineup evidence. (Dkt. 20, p. 13.) |
| (2) failing to object to Binns' identification testimony when the basis became readily available in the record. (Dkt. 1, p. 16.) | **Respondent's Claim 1(b)** <br> Trial counsel was ineffective for failing to object to the admissibility of Binns's testimony. (Dkt. 20, p. 13.) |
| (3) failing to preserve the "substantive [constitutional] violation" concerning the suggestive lineup and identification, thereby forfeiting the error from review on appeal. (Dkt. 1, p. 16.) | **Respondent's Claim 1(d)** <br> Trial counsel was ineffective for failing to preserve the issue of the unconstitutionally suggestive lineup in a posttrial motion. (Dkt. 1, p. 16.) |

---

6 Although Petitioner uses the term "one to one photographic show up," the Court interprets this to mean the physical lineup that he challenges throughout his petition. The Court reaches this conclusion because the instant claim discusses only the "suggestiveness of the identification" and the failure to "suppress[] the witness identification," which clearly relates to Binns's identification of Petitioner during the physical line-up, as is discussed in detail in other claims scattered throughout his petition. (Dkt. 1, p. 15-16); *see also id.* at p. 7-10 ("Identification Suggestive" claim).

14

| Ineffective Assistance of Counsel: Appellate Counsel (Dkt. 1, p. 17-18.) | Respondent's Claim 2(b) |
|---|---|
| Petitioner's appellate counsel was constitutionally ineffective for failing to challenge the sufficiency of the state's evidence to prove that he murdered the victim beyond a reasonable doubt. (Dkt. 1, p. 17-18.) | Direct appeal counsel was ineffective for failing to challenge the sufficiency of the trial evidence. (Dkt. 20, p. 13.) |

| Ineffective Assistance of Counsel: *Cronic* Standard (Dkt. 1, p. 18.) | Respondent's Claim 1(e) |
|---|---|
| Petitioner's counsel "failed to defend against the charges" such "that the trial was [the] functional equivalent of a guilty plea, rendering counsel's representation presumptively inadequate." (Dkt. 1, p. 18.) | Trial counsel was ineffective for failing to adequately defend petitioner at trial. (Dkt. 20, p. 13.) |

| Judicial Bias (Dkt. 1, p. 19.) | Respondent's Claim 3(a) |
|---|---|
| The trial court demonstrated judicial bias against Petitioner by erroneously barring multiple pieces of evidence sought to be introduced by defense counsel, including testimony about Sheppard's identification, an illustration of the "traveling range" between the crime scene and Petitioner's residence, and certain police reports. (Dkt. 1, p. 19.) | The trial court erred by showing bias towards petitioner. (Dkt. 20, p. 13.) |

| Prosecutor's Use of Perjured Testimony (Dkt. 1, p. 19-20.) | Respondent's Claim 4(b) |
|---|---|
| The State used perjured testimony regarding the murder weapon that the prosecutor knew Binns would not be able to attest to and relied on fabricated police reports from the Calumet City Police Department. (Dkt. 1, p. 19-20.) | The prosecution used perjured testimony (Dkt. 20, p. 14.) |

| Prosecutorial Misrepresentation (Dkt. 1, p. 20.) | Respondent's Claim 4(c) |
|---|---|
| The State misrepresented material facts concerning Binns's testimony during opening statements, suggesting Binns would testify that he saw the gun that the shooter used when he walked by the currency exchange. (Dkt. 1, p. 20.) | The prosecution misrepresented certain facts about Binns's testimony. (Dkt. 20, p. 14.) |

**GROUND FOUR: "TRIAL" (Dkt. 1, p. 21-28.)**

| *Crawford* Violation (Dkt. 1, p. 21.) | |
|---|---|
| Petitioner's Confrontation Clause rights were violated where the trial court: | |
| (1) admitted a photo array containing Petitioner's photo, which constituted "material and prejudicial 'testimonial' evidence;" and | **Respondent's Claim 3(b)**<br>The trial court erred by admitting into evidence a photo array containing petitioner's picture. (Dkt. 20, p. 13.) |
| (2) permitted the State to present the photo array to the jurors. (Dkt. 1, p. 21.) | **Respondent's Claim 3(f)**<br>The trial court erred by permitting the jury to view the photo array. (Dkt. 20, p. 14.) |
| Although the State was allowed to present evidence of the photo array, suggesting the victim identified Petitioner as the shooter, the defense was not allowed to introduce evidence of Sheppard's identification. (Dkt. 1, p. 21.) | **Respondent's Claim 3(e)**<br>The trial court erred by excluding evidence of Sheppard's identification statement. (Dkt. 1, p. 22.) |

| Confrontation Denial (Dkt. 1, p. 21-22.) | Respondent's Claim 3(c) |
|---|---|
| The trial court violated Petitioner's Confrontation Clause rights by allowing Sergeant Rapacz to testify about showing the photo array to the victim at the hospital because his testimony suggested the victim implicated Petitioner in the crime. (Dkt. 1, p. 21-22.) | The trial court erred by admitting Rapacz's testimony about Sanders viewing the photo array in violation of the Confrontation Clause. (Dkt. 20, p. 13.) |

| Cumulative Error (Dkt. 1, p. 22-23.) | Respondent's Claim 9 |
|---|---|
| Petitioner was denied due process by the combined effect of individual errors, which rendered his defense far less persuasive. (Dkt. 1, p. 22-23.) | The trial court's various evidentiary errors amounted to cumulative error. (Dkt. 1, p. 14.) |
| The trial court's refusal to allow Petitioner to introduce evidence of Sheppard's identification violated *Chambers v. Mississippi*, 410 U.S. 284 (1973). (Dkt. 1, p. 22.) | **Respondent's Claim 3(e)**<br>The trial court erred by excluding evidence of Sheppard's identification statement. (Dkt. 1, p. 22.) |

| Evidence Insufficient (Dkt. 1, p. 23.) | Respondent's Claim 6 |
|---|---|
| "Petitioner's conviction was obtained as a result of evidence that is insufficient to persuade a properly instructed, reasonable jury of his guilt beyond a reasonable doubt, in violation of the right to due process of law…" (Dkt. 1, p. 23.) | There was insufficient evidence to convict petitioner. (Dkt. 20, p. 14.) |

| Reasonable Doubt: Elements of Charge (Dkt. 1, p. 23-27.) | Respondent's Claim 7 |
|---|---|
| The State failed to prove Petitioner was the individual who killed the victim beyond a reasonable doubt because (1) Binns's identification testimony was unreliable, (2) the fingerprint evidence was questionable, and Petitioner's fingerprint found on the exterior of the victim's car could be easily explained since he lived in the area, and (3) the officers did not have Petitioner reduce his incriminating statements to writing or video record them. (Dkt. 1, p. 23-27.) | The State failed to prove the elements of the charged offense beyond a reasonable doubt. (Dkt. 20, p. 13.) |

| Right to Testify Over Counsel's Objection Infringed (Dkt. 1, p. 28.) | Respondent's Claim 3(d) |
|---|---|
| Petitioner was "denied the right to personally make the decision to testify [o]n his own behalf, even against the advice of counsel," where the trial court conditioned the scope of cross-examination of certain witnesses based on whether Petitioner would take the stand and where Petitioner wanted to testify as to his actual innocence, but counsel advised against it. (Dkt. 1, p. 28.) | The trial court erred by denying petitioner his right to testify. (Dkt. 20, p. 13.) |

## GROUND FIVE: "POST-TRIAL" (Dkt. 1, p. 29-30.)

| Actual Innocence ("Gateway Claim") (Dkt. 1, p. 29-30.) | Respondent's Claim 8 |
|---|---|
| Petitioner is actually innocent of the crimes. (Dkt. 1, p. 30.) | Actual innocence (Dkt. 20, p. 14.) |

17

The side-by-side comparison of the tables above can be summarized and reorganized as follows:

| Habeas Corpus Petition (Dkt. 1.) | Respondent's Answer (Dkt. 20.) |
|---|---|
| Ineffective Assistance of Counsel: Trial Counsel (Dkt. 1, p. 15.) | |
| (1) failed to file a pretrial motion to suppress the lineup evidence; | Claim 1(a) |
| (2) failed to object to Binns's testimony regarding his identification made during the suggestive lineup; and | Claim 1(b) |
| (3) failed to preserve the issue of the suggestive lineup and identification for direct appeal | Claim 1(d) |
| Ineffective Assistance of Counsel: Failure to Investigate (Dkt. 1, p. 14.) | Claim 1(c) |
| Counsel Denied: Trial (Dkt. 1, p. 13) / Ineffective Assistance of Counsel: *Cronic* Standard (Dkt. 1, p. 18.) | Claim 1(e) |
| Counsel Denied: Appeal (Dkt. 1, p. 12.) | Claim 2(a) |
| Ineffective Assistance of Counsel: Appellate Counsel (Dkt. 1, p. 17.) | Claim 2(b) |
| Judicial Bias (Dkt. 1, p. 19.) | Claim 3(a) |
| *Crawford* Violation (Dkt. 1, p. 21.) | |
| The trial court violated Petitioner's Confrontation Clause rights by: | |
| (1) admitting the photo array into evidence; and | Claim 3(b) |
| (2) allowing the photo array to be presented to the jury | Claim 3(f) |

| | |
|---|---|
| Confrontation Denial (Rapacz's testimony) (Dkt. 1, p. 21.) | Claim 3(c) |
| *Chambers* Claim (included under Cumulative Error heading) (Dkt. 1, p. 22.) | Claim 3(e) |
| Right to Testify over Counsel's Objection Infringed (Dkt. 1, p. 28.) | Claim 3(d) |
| *Brady* Violation | Claim 4(a) |
| Prosecutor's Use of Perjured Testimony (Dkt. 1, p. 19.) | Claim 4(b) |
| Prosecutorial Misrepresentation (Dkt. 1, p. 20.) | Claim 4(c) |
| *Massiah* Violation (Dkt. 1, p. 7.) | Claim 5(a) |
| Line-Up without Counsel (Dkt. 1, p. 10.) | Claim 5(b) |
| Identification Suggestive (Dkt. 1, p. 7.) / Line-Up Suggestive (Dkt. 1, p. 10.) | Claim 5(c) |
| Evidence Insufficient (Dkt. 1, p. 23.) | Claim 6 |
| Reasonable Doubt: Elements of Charge (Dkt. 1, p. 23.) | Claim 7 |
| Actual Innocence ("Gateway Claim") (Dkt. 1, p. 29.) | Claim 8 |
| Cumulative Error (Dkt. 1, p. 22.) | Claim 9 |

The purpose of the above tables is to provide clarity as to how Respondent identified each of the claims Petitioner raised in his petition. As mentioned above, the Court finds that Respondent's reorganization accurately conveys all of Petitioner's claims. For the remainder of this opinion, the Court will identify Petitioner's claims according to the numerical value assigned to it by Respondent.

19

## II.    Analysis

As discussed below, Petitioner is not entitled to federal habeas corpus relief. All of his claims, save for: Claims 3(b), 3(c), and 3(f) – Petitioner's Confrontation Clause claims; Claim 3(e) – Petitioner's *Chambers* claim; and Claims 6 and 7 – Petitioner's sufficiency of the evidence claim,[7] are procedurally defaulted. For the claims that are not procedurally defaulted, the Court finds Petitioner's arguments meritless.

### A.    Procedural Default

Respondent argues the following claims are procedurally defaulted because Petitioner failed to present them through one complete round of state court review:

- Claims 1(a)-(e): Ineffective assistance of trial counsel claims;

- Claims 2(a)-(b): Ineffective assistance of appellate counsel claims;

- Claims 3(a), 3(d), and 3(f): Judicial bias, denial of right to testify, and Confrontation Clause violation based on publication of photo array claims;

- Claims 4(a)-(c): *Brady* and prosecutorial misconduct claims;

- Claims 5(a)-(c): *Massiah* and police lineup claims;

- Claim 6: Insufficient evidence claim;

- Claim 7: Failure to prove guilt beyond a reasonable doubt claim;

- Claim 8: Actual innocence claim; and

- Claim 9: Cumulative error.

(Dkt. 20, p. 30-31.)

---

[7] Petitioner separates his sufficiency of the evidence challenge into two separate claims—Claim 6, arguing the evidence was insufficient, and Claim 7, arguing the State failed to prove his guilt beyond a reasonable doubt. The Court's review of the pleadings and the state court record reveal that Claims 6 and 7 advance the same legal theory and factual predicates, and should be treated as a single claim. For consistency purposes, the Court will refer to the sufficiency challenge as "Claims 6 and 7."

As explained below, this Court agrees with Respondent's procedural default arguments, with the exception of Claim 3(f), and Claims 6 and 7.

Under § 2254(b), "a state prisoner must exhaust available state remedies before presenting his claim to a federal habeas court." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (citing § 2254(b)(1)(A)). To satisfy the exhaustion requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In Illinois, this includes presenting the claims in a petition for leave to appeal to the state supreme court. *Snow v. Pfister*, 880 F.3d 857, 864 (7th Cir. 2018) (citing *Boerckel*, 526 U.S. at 845-46).

Failure to fairly present a claim through one complete round of state court review renders the issue procedurally defaulted. *Thomas v. Williams*, 822 F.3d 378, 384 (7th Cir. 2016). Procedural default precludes federal habeas corpus review unless "the petitioner demonstrates either (1) 'cause for the default and actual prejudice' or (2) 'that failure to consider the claims will result in a fundamental miscarriage of justice.'" *Id.* at 386 (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

### 1. Claims 1(a)-(e), 2(a)-(b), 3(a), 3(d), 4(a)-(c), 5(a)-(c), 8, and 9 are Procedurally Defaulted

***Petitioner's Direct Appeal and Direct Appeal PLA***

On direct appeal, with the assistance of counsel, Petitioner alleged the trial court made several errors, including allowing the photo array to be admitted into evidence (Claim 3(b)); allowing Sergeant Rapacz to testify that the victim viewed the photo array (Claim 3(c)); suggesting Petitioner waive his right to not testify (Claim 3(d)); not allowing Petitioner to introduce evidence of Sheppard's identification (Claim 3(e)); and allowing the jury to view the photo array (Claim

3(f)). (Dkt. 21-7, p. 22-36, 41.) Petitioner also argued the trial court's evidentiary rulings amounted to cumulative error (Claim 9).

In his counseled, direct appeal PLA, Petitioner presented to the state supreme court his claims regarding the admission of the photo array (Claim 3(b)), Sergeant Rapacz's testimony about the photo array (Claim 3(c)), and the ruling barring admission of Sheppard's affidavit (Claim 3(e)). (Dkt. 21-5, p. 11-18.) Additionally, and contrary to Respondent's argument, Petitioner asserted it was error for the photo array to be published to the jury (Claim 3(f)). *Id.* at 15-18. Petitioner did not, however, include in his direct appeal PLA his claims regarding his right to not testify (Claim 3(d)), nor cumulative error (Claim 9).

The following claims were therefore exhausted on direct review:

- Claim 3(b): The trial court erred by admitting the photo array into evidence

- Claim 3(c): The trial court erred by allowing Rapacz's photo array testimony

- Claim 3(e): The trial court erred by barring evidence of Sheppard's statements

- Claim 3(f): The trial court erred by allowing the jury to view the photo array

This means the remainder of Petitioner's claims are procedurally defaulted unless properly preserved during postconviction proceedings. According to Respondent, none of the claims raised in Petitioner's § 2254 petition were raised through one complete round of state, postconviction review. However, as explained below, there is no procedural default as to Claims 6 and 7.

***Petitioner's Postconviction Proceedings***

Petitioner's *pro se* postconviction petition argued various grounds of ineffective assistance, including a claim that appellate counsel was ineffective for failing to argue on direct appeal that

22

the evidence was insufficient to prove his guilt beyond a reasonable doubt (Claim 2(b)). Together with this claim, he challenged the sufficiency of the evidence (Claims 6 and 7). *Id.* at 2, p. 24-34.

On appeal, Petitioner's appointed counsel reraised his ineffective assistance of appellate counsel claim based on the sufficiency challenge (Claim 2(b)). (Dkt. 21-10, p. 14-23.) The brief contended that a sufficiency claim would have been meritorious if raised on direct appeal because the State's case rested on Binns's "unreliable identification," "questionable fingerprint evidence," and Petitioner's "un-memorialized statements." *Id.* The postconviction appellate court denied Petitioner's ineffective assistance claim upon concluding a sufficiency challenge would have been meritless. *Morris*, 2020 IL App (1st) 162723-U, ¶¶ 29-40.

In his *pro se* postconviction PLA, Petitioner challenged the state appellate court's conclusion that a sufficiency challenge would not have been successful on direct appeal, repeating the same arguments previously raised by his postconviction appellate attorney as to why the evidence was insufficient to find him guilty (Claims 6 and 7). (Dkt. 21-6, p. 2-7.) However, unlike his appellate brief, he did not raise his sufficiency challenge within the context of an ineffective assistance of counsel claim. Because the sufficiency challenge was raised as a standalone claim in his postconviction PLA, but as an ineffective assistance claim in his postconviction appeal, Respondent argues both claims (Claim 2(b), and Claims 6 and 7) are procedurally defaulted.[8]

---

8 Respondent notes that Petitioner also raised an actual innocence claim in his *pro se* postconviction petition and his *pro se* postconviction PLA, but argues the claim is procedurally defaulted because it was not raised on postconviction appeal. (Dkt. 20, p. 1.) Alternatively, Respondent argues a standalone actual innocence claim is not cognizable on federal habeas corpus review. *Id.* (citing *Gladney v. Pollard*, 799 F.3d 889, 895 (7th Cir. 2015)) ("The Supreme Court has not recognized a petitioner's right to habeas relief based on a stand-alone claim of actual innocence."). Petitioner, however, made clear in his petition that he was asserting actual innocence as a means to excuse any procedural defaults. (Dkt. 1, p. 29.) Based on Petitioner's representations, the Court does not interpret Claim 8 as a standalone actual innocence claim; rather it will be considered for purposes of determining whether Petitioner can obtain review of any defaulted claims. *See Cal v. Garnett*, 991 F.3d 843, 850 (7th Cir. 2021) ("Today's law treats as a showing of 'actual innocence' as a way for prisoners to overcome procedurally defaulted and time-barred habeas claims.'").

An important corollary of the exhaustion doctrine is "the duty to fairly present [the] federal claim[] to the state courts." *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004) (citations omitted). "Fair presentment requires the petitioner to give the state courts a meaningful opportunity to pass upon the substance of the claims later presented in federal court." *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001) (internal quotation marks and citations omitted). A claim is fairly presented where the petitioner submits "both the operative facts and the controlling legal principles" through one complete round of state court review. *Malone v. Walls*, 538 F.3d 744, 753 (7th Cir. 2008).

Given the requirement of fair presentation, it would appear that Respondent's procedural default argument is correct. The Court agrees as to Claim 2(b). Fair presentment is not met for this claim as nowhere in Petitioner's postconviction PLA does he mention ineffective assistance of appellate counsel, and the state court is not required to read beyond the four corners of the filing, such as reviewing the state appellate court's opinion on postconviction appeal, to ascertain the nature of Petitioner's federal claim. *See Perruquet v. Briley*, 390 F.3d 505, 521 (7th Cir. 2004) (citing *Baldwin v. Reese*, 541 U.S. 27, 32 (2004)). Claim 2(b) is procedurally defaulted.

As to Claims 6 and 7, the Court reaches a different conclusion. It is clear from Petitioner's postconviction filings that he was using an ineffective assistance of appellate counsel claim as a vehicle to reach the merits of his insufficient evidence claim. In each of his postconviction pleadings, he alerted the state courts to the underlying sufficiency claim (that the evidence was insufficient to find him guilty beyond a reasonable doubt) and its factual basis (unreliable identification testimony, questionable forensic evidence, and unrecorded inculpatory statements).

24

Moreover, the state appellate court recognized Petitioner was asserting a sufficiency challenge, and considered the claim's merits on postconviction appeal:

> When a defendant challenges his conviction based upon the sufficiency of the evidence presented against him, we must ask whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.
>
> …
>
> After viewing the evidence in the light most favorable to the State, we conclude that a rational trier of fact could have found beyond a reasonable doubt that defendant committed the offenses at issue when an eyewitness identified defendant as the person who emerged from [the victim's] vehicle following the shooting, defendant's fingerprints were recovered from [the victim's] vehicle, and defendant told police that he may have been in the area the day and time of the shooting and that it was not "cold-blooded."

*Morris*, 2020 IL App (1st) 162723-U, ¶¶ 30, 32.

"[W]hen it is clear from the state court's decision that it not only recognizes petitioner's federal claim, but also resolves the claim on the merits," as the state appellate court did here, "engaging in [the] typical [fair presentment] assessment is unnecessary." *Malone*, 538 F.3d at 756. "Regardless whether the petitioner has satisfied *our* constructs for fair presentment, if the state resolves a claim on the merits, the petitioner's presentation must have been sufficient to alert the state court to the nature of the claim." *Id.* (emphasis in original).

The state appellate court's opinion demonstrates that it understood, despite the absence of a standalone sufficiency claim, that Petitioner sought relief on grounds that the evidence was insufficient to prove his guilt. Further, the merits of such a claim were considered and rejected by the state appellate court. "Because the state appellate court took the opportunity to resolve [Petitioner's] federal claim[] on the merits, the interest behind the exhaustion and fair presentment requirements-to provide the state with the first opportunity to correct constitutional errors-has been

served." *Malone*, 538 F.3d at 757. And because Petitioner subsequently presented his sufficiency challenge to the state supreme court in his postconviction PLA, his claim is fully exhausted. Claims 6 and 7 have been preserved for habeas corpus review.

In sum, the Court finds Petitioner properly exhausted Claims 3(b), 3(c), 3(e), 3(f), and Claims 6 and 7, and will consider the merits of these claims. As to Claims 1(a), 1(b), 1(c), 1(d), 1(e), 2(a), 2(b), 3(a), 3(d), 4(a), 4(b), 4(c), 5(a), 5(b), 5(c), 8, and 9, these claims are procedurally defaulted as they were not presented through one complete round of state court review, and the merits of these claims will not be considered unless Petitioner can establish cause and prejudice, or a fundamental miscarriage of justice.

### 2. Cause and Prejudice and Fundamental Miscarriage of Justice

Petitioner cannot excuse his defaults through either cause and prejudice, or by demonstrating a fundamental miscarriage of justice. As to cause and prejudice, cause is an "objective factor, external to [Petitioner] that impeded [his] efforts to raise the claim in an earlier proceeding." *Johnson v. Foster*, 786 F.3d 501, 505 (7th Cir. 2015) (citing *Weddington v. Zatecky*, 721 F.3d 456, 465 (7th Cir. 2013)). Examples of cause include: (1) interference by officials making compliance impractical; (2) the factual or legal basis was not reasonably available to counsel; or (3) ineffective assistance of counsel. *Guest v. McCann*, 474 F.3d 926, 930 (7th Cir. 2007) (citing *McCleskey v. Zant*, 499 U.S. 467 (1991)).

Petitioner does not argue there exists cause to excuse his defaults, nor would he be able to do so. Any failure by Petitioner's counsel to raise a claim on direct appeal does not excuse his defaults. To excuse a default on such grounds, the ineffective assistance of counsel claim must, itself, be properly preserved in the state courts. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000);

*Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009). As explained above, Petitioner did not exhaust any ineffective assistance of counsel argument. Nor could he argue his appointed counsel was ineffective for failing to preserve his claims in postconviction proceedings, as such an argument does not constitute grounds to excuse a default. *See Davila*, 137 S. Ct. at 2062-63.

This leaves the fundamental miscarriage of justice (actual innocence) exception. To show actual innocence to defeat a default, Petitioner must demonstrate that "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013) (citing *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). This is a "demanding" and "seldom met" standard. *Id.* at 386 (citing *House v. Bell*, 547 U.S. 518, 538 (2006)). Petitioner must present new, reliable evidence that was not presented at trial --- such as exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence --- to make a credible claim of actual innocence. *House*, 547 U.S. at 537 (citing *Schlup*, 513 U.S. at 324). "[A]dequate evidence is 'documentary, biological (DNA), or other powerful evidence: perhaps some non-relative who places him out of the city, with credit card slips, photographs, and phone logs to back up the claim.'" *McDowell v. Lemke*, 737 F.3d 476, 483-84 (7th Cir. 2013) (quoting *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005)).

Petitioner argues that he is actually innocent because: (1) the State's evidence against him was weak; (2) Sheppard and Spinks's identifications exonerated him; (3) two other witnesses told a private investigator the shooter may have been someone different; and (4) two affidavits show that he did not commit the crime and had an alibi. (Dkt. 1, p. 29-30.) None of these arguments are sufficient to satisfy the actual innocence standard.

27

Although the Court may consider the strength of the State's case in conducting the actual innocence inquiry, *see Coleman v. Hardy*, 628 F.3d 314, 319 (7th Cir. 2010), Petitioner's allegation that the evidence against him was weak does not, itself, meet *Schlup*'s demanding standard, nor is it supported by the record. Rather, the evidence of his guilt was overwhelming. Binns was an eyewitness to the attempted armed robbery and murder. He saw Petitioner enter the victim's car, heard multiple gunshots, and saw Petitioner's face as he left the scene. At all times— from the physical lineup through trial—Binns's maintained that Petitioner was the offender. Further, Binns's identification was corroborated by both the physical evidence—Petitioner left his fingerprints on the victim's door when he closed it after shooting the victim—and Petitioner's own statements that he was in the area at the time of the shooting, asked if the old man was okay, and insisted his offenses weren't cold-blooded.

Additionally, and contrary to Petitioner's claim, Spinks and Sheppard's identification of the filler in the lineup does not establish actual innocence. Spinks admitted that he did not see the shooter's face and did not believe he could identify the offender in the lineup. His identification was not reliable, and the reliability of his wife's identification could not be subjected to similar testing. In any event, this evidence is not new. *See Gladney v. Pollard*, 799 F.3d 889, 896 (7th Cir. 2015) ("gateway claim of actual innocence under *Schlup* could be viable only if [it] presents evidence not previously considered"). Petitioner presented evidence at trial that an identification of someone other than him was made. The jury considered this evidence alongside the other evidence in the record and, unsurprisingly, convicted Petitioner.

As to the two witnesses who allegedly told an investigator that the offender may have been someone else, Petitioner attached as an exhibit to his petition a letter from his trial counsel

indicating that the reason these witnesses were not further investigated or called to testify at trial is because "neither were able to provide a useful identification or exclude [Petitioner] as the shooter," and "both … thought that it was possible that [Petitioner] could have been the shooter." (Dkt. 1, p. 92.) A summary of the private investigator's interview with one of these witnesses corroborates counsel's letter. *Id.* at 88-91. The summary indicates that the witness was provided a photo of the lineup and stated she thought the shooter may be "2, 3, 4, [or] 5." *Id.* at 90. Petitioner was positioned as number three in the lineup. (Dkt. 21-17, p. 196-97.) These witnesses, who clearly do not exculpate Petitioner, do not support a claim of actual innocence.

Finally, Petitioner includes with his petition two affidavits which he contends demonstrate his innocence. The first is a 2016 affidavit from Nicholas Akerele. (Dkt. 1, p. 94.) His affidavit describes a telephone call he had with a man named Cordell Allen in 2009. *Id.* He asserts that during this call, Allen claimed responsibility for the shooting. *Id.* Petitioner provides no affidavit from Allen, nor any evidence that would otherwise back up this claim. *See McDowell*, 737 F.3d at 483. Akerele's unsubstantiated affidavit does not satisfy *Schlup*'s demanding standard.

The second affidavit, executed in 2020 by Petitioner's ex-girlfriend, Antionette Hendricks, is likewise insufficient to establish actual innocence. (Dkt. 1, p. 99.) Hendricks claimed that, at the time of the shooting, she and Petitioner hung out daily from 8 a.m. to 2:30 p.m. *Id.* Other than implying she would have been with Petitioner on the day in question, she provides no further details supporting the alleged alibi. And though she states she did not testify at trial because her now-deceased, ex-boyfriend told Petitioner's counsel she was unavailable, (Dkt. 1, p. 99), this explanation does not account for the nearly ten-year delay between the investigation and her

coming forward.[9] *See Blackmon v. Williams*, 823 F.3d 1088, 1102 (7th Cir. 2016) ("they did not come forward until eight years after the murder, a substantial delay that could affect their memories and/or their credibility").

For all the reasons above, Petitioner cannot establish actual innocence to excuse his procedural defaults.

### B.    Claims Considered on the Merits

The Court now turns to its merits consideration of Claims 3(b), 3(c), 3(e), 3(f), and Claims 6 and 7. "A federal court may grant habeas relief following an adjudication on the merits in state court only if that decision (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Armfield v. Nicklaus*, 985 F.3d 536, 540-41 (7th Cir. 2021) (quoting § 2254(d)(1)-(2)). This is a "difficult to meet" and "highly deferential standard for evaluating state-court rulings" that "demands [] state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks omitted) (citing *Harrington v. Richter*, 562 U.S. 86, 102 (2011); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

A state court decision is "contrary to" clearly established federal law "if the state court 'applie[d] a rule different from the governing law set forth' in Supreme Court decisions or decided

---

9 Petitioner speculates the delay in Hendricks's coming forward was due to her boyfriend's jealousy. (Dkt. 24, p. 10.) But Hendricks's affidavit shows that she had the opportunity to speak with Petitioner's counsel in 2012 or 2013 and could have, at that time, provided sufficient information to establish that Petitioner had an alibi on the day in question as she now claims. (Dkt. 1, p. 99.) Regardless of whether Petitioner's jealousy claims are true, Hendricks affidavit, executed nearly 10 years after she allegedly spoke to defense counsel and not supported by any other evidence, is inherently suspect and not sufficiently reliable to establish a meritorious actual innocence claim.

30

a case differently than the Supreme Court has 'on a set of materially indistinguishable facts.'" *Corral v. Foster*, 4 F.4th 576, 582 (7th Cir. 2021) (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)).

An "unreasonable application of" clearly established federal law occurs when "the state court correctly identified the governing rule from Supreme Court precedent but "unreasonably applie[d] it to the facts of the particular case.'" *Id.* (citation omitted). This requires the petitioner to "show that the state court's ruling … was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation marks and citation omitted).

Finally, "[u]nder § 2254(d)(2), a [state-court] decision involves an unreasonable determination of facts if it rests upon fact-finding that ignores the clear and convincing weight of the evidence." *Goudy v. Basinger*, 604 F.3d 394, 399-400 (7th Cir. 2010) (citing *Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003)).

The relevant state-court decision for this Court's consideration "is that of the last state court to address a given claim on the merits." *Makiel v. Butler*, 782 F.3d 882, 896 (7th Cir. 2015) (citing *Greene v. Fisher*, 565 U.S. 34, 40 (2011)).

### 1.      Petitioner's Confrontation Clause Claims: Evidence and Testimony Regarding the Photo Array (Claims 3(b), 3(c), 3(f))

Petitioner claims his Sixth Amendment Confrontation Clause rights were violated when the trial court allowed the photo array containing his picture to be admitted into evidence (Claim 3(b)); permitted Sergeant Rapacz to testify about showing the photo array to the victim (Claim 3(c)); and allowed the photo array to be published to the jury (Claim 3(f)). (Dkt. 1, p. 21-22.) He contends introduction of the photo array and Sergeant Rapacz's testimony led to the inference that

the victim identified Petitioner as his assailant, and this inference could not be challenged on cross-examination because the victim was deceased and therefore unavailable for trial. *Id.*

Petitioner's Confrontation Clause claims were last adjudicated on the merits by the state appellate court on direct review. *See Morris*, 2015 IL App (1st) 140846-U. This opinion is thus the relevant decision for this Court's consideration as to whether Petitioner can overcome § 2254(d)'s high bar for federal habeas corpus relief.

The Confrontation Clause of the Sixth Amendment protects the right of a criminal defendant "to be confronted with the witnesses against him," and to cross-examine those witnesses. U.S. Const. Amend. VI. Cross-examination plays a critical role in criminal proceedings, as it is "the principal means by which the believability of a witness and the truth of his testimony are tested." *Jones v. Basinger*, 635 F.3d 1030, 1040 (7th Cir. 2011) (internal quotation marks and citations omitted).

To ensure defendants are guaranteed the benefits of cross-examination, the Supreme Court held in *Crawford v. Washington*, 541 U.S. 36 (2004), that the right to confrontation bars admission of "testimonial statements of a witness who did not appear at trial, unless [the witness] was unavailable to testify, and the defendant had [] a prior opportunity for cross-examination." 541 U.S. at 53-54;[10] *see also Jones*, 635 F.3d at 1041. If, however, the out-of-court testimonial statement is being offered for something other than the truth of the matter asserted, the

---

10 The *Crawford* Court declined to "spell out a comprehensive definition" of the term "testimonial," 541 U.S. at 64, but "examples and other guidance from the Supreme Court indicate that the term pertains to statements that a declarant makes in anticipation of or with an eye toward a criminal prosecution," such as those made during a police interrogation. *United States v. Tolliver*, 454 F.3d 660, 665 (7th Cir. 2006) (citing *Davis v. Washington*, 547 U.S. 813, 822 (2006); *United States v. Gilbertson*, 435 F.3d 790, 795-96 (7th Cir. 2006) (collecting authorities)). The claims before this Court do not turn on whether the challenged statements were testimonial; rather, Petitioner's claims raise a different *Crawford* issue: whether the challenged testimony constitutes hearsay, *i.e.*, whether it was offered for the truth of the matter asserted. *See Jones*, 635 F.3d at 1041-42. Because the "testimonial" question is not implicated, this Court will not discuss it further.

Confrontation Clause does not bar its admission. *Crawford*, 541 U.S. at 59 n.9. In other words, "the Sixth Amendment poses no bar to the admission of non-hearsay statements." *United States v. James*, 487 F.3d 518, 525 (7th Cir. 2007).

On direct review, the state appellate court correctly identified the commands of *Crawford*, and its application to testimonial hearsay—as opposed to non-hearsay—statements. *Morris*, 2015 IL App (1st) 140846-U, ¶ 97. Petitioner therefore cannot demonstrate the state appellate court's decision was "contrary to" clearly established federal law. As to each claim—admission of the photo array (Claim 3(b)), Sergeant Rapacz's testimony (Claim 3(c)), and publication of the photo array (Claim 3(f))—the state appellate court rejected Petitioner's arguments, holding no Confrontation Clause violation occurred. For the reasons below, the state court's ruling does not entitle Petitioner to federal habeas corpus relief.

### Claim 3(b): Admission of Photo Array

As to Petitioner's Confrontation Clause challenge to the admission of the photo array, the state appellate court held "a photograph is not a 'statement' and therefore cannot violate *Crawford*." *Morris*, 2015 IL App (1st) 140846-U, ¶ 105 (citing Ill. R. Evid. 801(a), (c)). This conclusion was not unreasonable.

"*Crawford* applies only to [testimonial] hearsay, which must be a statement offered for the truth of the matter asserted." *United States v. York,* 572 F.3d 415, 427 (7th Cir. 2009) (citing *Crawford*, 541 U.S. at 59 n.9; Fed. R. Evid. 801(c)); *see also Crawford*, 541 U.S. at 51 (citation omitted) (explaining the Confrontation Clause "applies to 'witnesses' against the accused—in other words, those who 'bear testimony.' … "'Testimony,' in turn, is typically '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'").

33

"Still frame pictures," however, "are not statements at all, let alone testimonial ones." *United States v. Clotaire*, 963 F.3d 1288, 1295 (11th Cir. 2020) (citing *United States v. Wallace*, 753 F.3d 671, 675 (7th Cir. 2014)). A photo array does not bear witness; "it [i]s not a witness who could be cross-examined." *Wallace*, 753 F.3d at 675. And this Court finds no authority that a photo array could somehow be "intended as an assertion" so as to meet the definition of a "statement" under Illinois's hearsay rule. *See* Ill. R. Evid. 801(a); *see also Wallace*, 753 F.3d at 675 (citing Fed. R. Evid. 801) (finding no Confrontation Clause error because video "was not a 'statement' the maker of which could be 'confronted' to test the 'statement's' accuracy").

Petitioner therefore cannot demonstrate the state appellate court's holding as to the photo array was an unreasonable application of *Crawford*. Claim 3(b) is denied.[11]

### Claim 3(c): Sergeant Rapacz's Testimony

Similarly, the state appellate court found no Confrontation Clause violation as to Sergeant Rapacz's testimony in which he related showing the victim the photo array containing Petitioner's picture before returning to the police station to continue his investigation of Petitioner. *Morris*, 2015 IL App (1st) 140846-U, ¶ 99. "The testimony," explained the state court, "was not offered for its truth, but rather to show the course of the police investigation that led to [Petitioner]'s murder charge." *Id.*

> Sergeant Rapacz's testimony was certainly admissible to establish his course of conduct with respect to the murder investigation. Sergeant Rapacz testified that he met [the victim] at the hospital after the crime in question and showed him a photo array containing [Petitioner's] photograph. He testified that [the victim]

---

[11] To the extent Petitioner seeks to challenge the admission of the photo array based on an allegedly erroneous application of Illinois' evidentiary rules, he is barred from doing so because errors in state law are not cognizable in federal habeas corpus proceedings. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). It is true that evidentiary errors can rise to the level of a due process violation, but only if the "error produced a significant likelihood that an innocent person has been convicted." *Anderson v. Sternes*, 243 F.3d 1049, 1054 (7th Cir. 2001). As discussed, the evidence of Petitioner's guilt is overwhelming.

> communicated with him by shaking his head and using his hands. He returned to the police station after showing [the victim] the photo array and conducted a physical lineup that included [Petitioner]. Importantly, Sergeant Rapacz never testified to the substance of his conversation with [the victim]; he merely testified that he spoke with [the victim] and acted on the information he received.

*Id.* The state appellate court concluded that because there was no hearsay issue, there was no *Crawford* issue. *Id.*

The state appellate court's decision rests on what is known as the "course of investigation" rationale. *See Carter v. Douma*, 796 F.3d 726, 736 (7th Cir. 2015). Under this theory, statements heard by an officer during the course of his or her investigation are properly considered non-hearsay when offered "only to show the effect [they] had on the police." *Id.* (citation omitted). Such statements are admissible, for example, "when brief and essential to 'bridge gaps in the trial testimony' that might significantly confuse or mislead jurors." *United States v. Walker*, 673 F.3d 649, 657-58 (7th Cir. 2012) (quoting *Jones*, 635 F.3d at 1046). This approach comports with the dictates of the Confrontation Clause because the statements are introduced for something other than the truth of the matter asserted. *Douma*, 796 F.3d at 736 (citing *Crawford*, 541 U.S. at 59 n.9; *United States v. Gaytan*, 649 F.3d 573, 579 (7th Cir. 2011)); *see also United States v. Eberhart*, 434 F.3d 935, 939 (7th Cir. 2006) (explaining testimony is not for its truth where it is offered "only as an explanation of why the investigation proceeded as it did").

However, as the Seventh Circuit has cautioned, "an unthinking, expansive application of the 'course of investigation' exception" has the potential to undermine the protections of the Confrontation Clause. *Jones*, 635 F.3d at 1046.

> The problem, as we have explained time and time again, is that the 'course of investigation' gambit is so often abused and/or misunderstood that it is an evidentiary and constitutional minefield. See, e.g., *Jones*, 635 F.3d at 1046; *United States v. Silva*, 380 F.3d 1018, 1020 (7th Cir. 2004) ("Allowing agents to narrate

the course of their investigations, and thus spread before juries damning information that is not subject to cross-examination, would go far toward abrogating the defendant's rights under the sixth amendment and the hearsay rule."). To convict a defendant, after all, the prosecution does not need to prove its reasons for investigating him. *United States v. Mancillas*, 580 F.2d 1301, 1310 (7th Cir. 1978). When the prosecution offers out-of-court statements of non-witnesses on the theory that they are being offered to explain 'the course of the investigation,' it runs a substantial risk of violating both the hearsay rules of evidence and the Confrontation Clause rights of the defendant under the Sixth Amendment. Both the defense counsel and the trial judges need to be on high alert when the prosecution offers what sounds like hearsay to explain 'the course of the investigation.'

*Douma*, 796 F.3d at 736.

Petitioner challenges the state appellate court's finding that Sergeant Rapacz's testimony concerning the presentation of the photo array was introduced only for the purpose of explaining the officer's course of conduct. (Dkt. 1, p. 21-22.) He argues, instead, that the purpose of the testimony was to show that the victim implicated Petitioner in the crime. *Id.* The purpose for which a statement was offered is a question of fact, not of law. *Jones*, 635 F.3d at 1042. This Court is "bound by the state appellate court's conclusion"—that the challenged testimony was offered not for its truth, but to show Sergeant Rapacz's course of conduct— "unless there is clear and convincing evidence to the contrary." *Id.* (citing 28 U.S.C. § 2254(e)(1)).

Sergeant Rapacz's photo-array testimony was introduced under the theory that it was relevant to show the course of conduct leading up to Petitioner's placement in the lineup. The issue, however, is that it does not appear that any context or "gap-bridging" was needed to explain to the jury why Petitioner was a suspect. *See Walker*, 673 F.3d at 657-58. Rather, the record shows that the investigation of Petitioner was straightforward: fingerprints lifted from the victim's car were submitted to the crime lab, the crime lab matched the prints to Petitioner, a BOLO regarding Petitioner was issued, the BOLO led to Petitioner's arrest, Petitioner made an incriminating

statement after he was taken into custody, and Petitioner was subsequently identified as the perpetrator in the lineup. In fact, the state appellate court acknowledged the insignificant impact that the photo array had in Petitioner's case:

> [Petitioner] had been picked up as a suspect in the crime and made a very incriminating statement while in custody. Under the circumstances, it is nearly unfathomable that he would not have been placed in a lineup even if [the victim] had not been able to identify him in the photo array.

*Morris*, 2015 IL App (1st) 140846-U, ¶ 103.

It seems, then, that the only role Sergeant Rapacz's photo-array testimony played in the above narrative was to suggest another evidence source (the victim) inculpated Petitioner in the crime. *See e.g., Dixon v. Pfister*, 420 F. Supp. 3d 740, 764 (N.D. Ill. 2019) (rejecting course-of-conduct theory where "[n]othing in the trial record suggested that [p]etitioner might challenge the detectives' reason for including him in a photo-array").

The state trial court's "[it] could go both ways" rationale is not any more compelling. In overruling Petitioner's objection to the introduction of Sergeant Rapacz's testimony, the trial court explained that, because no clear inference could be drawn as to whether the victim identified Petitioner in the photo array, the officer's testimony was admissible as non-hearsay, course-of-conduct testimony.

> The inference could be – could go both ways, that [the victim] made no identification or that he made the wrong identification or he made an identification of [Petitioner]. All three of those are possibilities here, and they have the right to go into explaining the course of the investigation and particularly the time.

(Dkt. 21-17, p. 189). This rationale was accepted by the state appellate court on direct review, though it was raised only in the court's discussion of the prejudicial impact of the testimony. *Morris*, 2015 IL App (1st) 140846-U, ¶ 103.

But the absence of the victim's express identification does not necessarily immunize Sergeant Rapacz's testimony from being considered improper hearsay. "Testimony about an out of court statement does not have to include an express recounting of the statement to constitute hearsay; where the testimony effectively conveys the substance of the out-of-court statement by some other means, the statement still constitutes hearsay if offered for the truth of what was asserted." *Williams v. Jaimet*, No. 13 C 4120, 2017 WL 1425591, *9 (N.D. Ill. Apr. 20, 2017).

The Court notes, however, that one of the arguments advanced by Petitioner at trial was to call into question the officers' "confirmation bias[es]" in conducting their investigation, (Dkt. 21-20, p. 72-73), arguing "they set out to build a case against him" after "they got lucky" and matched his prints to those found on the victim's car. *Id.* at 55-56. "The course of an investigation may become relevant to rebut defenses and theories" that attack the integrity or professionalism of the officers who conducted the investigation. *Jaimet*, 2017 WL 1425591, *8 (citing *United States v. Silva*, 380 F.3d 1018, 1020 (7th Cir. 2004)). For example, "[i]f a jury would not otherwise understand why an investigation targeted a particular defendant, the testimony could dispel an accusation that the officers were officious intermeddlers staking out [Petitioner] for nefarious purposes." *Silva*, 380 F.3d at 1020.

The photo array testimony toes the line. Though it seems doubtful the jury would have any misunderstanding as to why Petitioner was targeted as a suspect, Sergeant Rapacz's testimony could arguably be considered relevant to dispel the theory that the police's investigation was manufactured to target Petitioner by showing all the steps that were taken during the course of their investigation, including conducting a photo array.

What is clear from this Court's review of the record, however, is that even if the state appellate court unreasonably determined Sergeant Rapacz's testimony was permissible as non-hearsay under the course-of-conduct exception, Petitioner cannot establish the error resulted in "actual prejudice." *Davis v. Ayala*, 576 U.S. 257, 267 (2015) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993)) ("habeas petitioners are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice'"). In habeas corpus proceedings, relief may only be granted if there is "grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict." *Id.* at 267-68 (quoting *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995)). This requires "more than a 'reasonable possibility' that the error was harmful." *Id.* at 268 (quoting *Brecht*, 507 U.S. at 637).

Petitioner cannot meet this test. As discussed above, the evidence of Petitioner's guilt is overwhelming. Binns was an eyewitness who was available for trial and could testify to his observations at the currency exchange, his view of the Petitioner's face leaving the victim's vehicle, and his identification of Petitioner in the lineup. Beyond Binns's testimony, Petitioner left behind physical evidence at the crime scene. His fingerprints were found on the exterior window on the victim's passenger-side door—the same door Binns saw him open to gain entry to the vehicle and the same door Binns saw him exit and push close after shooting the victim. Forensic testing revealed almost 90 points of comparison between the fingerprints lifted from the victim's car and Petitioner's pinky, ring, and middle fingers. Finally, Petitioner inculpated himself in the crime. Petitioner did not have to be informed that the attempted armed robbery and shooting involved an old man. He knew this about his victim. And once he was told that he had been positively identified in a physical lineup, he avowed the shooting wasn't cold-blooded.

39

Against the weight of this compelling evidence—the eyewitness identification, the physical evidence, and the incriminatory statements—Sergeant Rapacz's photo array testimony could not have had a substantial effect in determining the jury's verdict. The testimony was brief, it did not reveal the substance of the sergeant's conversation with the victim, and, contrary to Petitioner's argument, it was not improperly alluded to during closing argument. Rather, the State's argument that the victim "has spoken to [the jury] through the evidence," clearly refers to the evidence as a whole, not a specific reference to the victim speaking through the photo array.

Given the strength of the evidence against him, there can be little doubt that Petitioner would have been convicted regardless of Sergeant Rapacz's photo array testimony. Accordingly, he is not entitled to federal habeas corpus relief on Claim 3(c).

### Claim 3(f): Allowing Jury to View Photo Array

Finally, Petitioner argues that it was error to allow the jury to view the photo array containing his photo. (Dkt. 1, p. 21.) He contends this resulted in a Confrontation Clause violation because the State told the jurors during closing argument that the photo array was the victim's way of speaking to the jurors through the evidence. *Id.*

The state appellate court rejected Petitioner's arguments on direct appeal, noting he had not provided any caselaw in support of this claim and finding the trial court did not otherwise abuse its discretion in permitting the jury to view the photo array. *Morris*, 2015 IL App (1st) 140846-U, ¶ 105.

Allowing the jury to view the photo array during deliberations does not implicate the Confrontation Clause. As discussed above, the admission of the photo array was not violative of the Confrontation Clause because photos are not statements and, thus, do not constitute hearsay.

40

*See Wallace*, 753 F.3d at 675; *Clotaire*, 963 F.3d at 1295. And contrary to Petitioner's contentions, the State did not imply the victim was speaking to the jury through the photo array during closing argument.

Rather, Petitioner's claim raises an issue of state law. *See Gallina v. Watson*, N.E.2d 326, 331 (Ill. App. 2004) (explaining the decision whether to send exhibits to the jury room is within the trial court's sound discretion); 735 ILCS 5/2-1107 ("Papers read or received in evidence … may be taken by the jury to the jury room for use during deliberations."). Errors of state law are not cognizable on federal habeas corpus review. *Estelle*, 502 U.S. at 67-68; *Perruquet*, 390 F.3d at 511. And Petitioner cannot show that the claimed evidentiary error amounted to a violation of due process because, as repeatedly discussed, the evidence of his guilt was overwhelming. *Anderson v. Sternes*, 243 F.3d 1049, 1054 (7th Cir. 2001) ("habeas relief is appropriate only if the erroneous evidentiary ruling … "produced a significant likelihood that an innocent person has been convicted."). Claim 3(f) is therefore denied.

### 2. Petitioner's *Chambers* Claim: Sheppard's Hearsay Statements Regarding Her Lineup Identification (Claim 3(e))

In Claim 3(e), Petitioner alleges his due process rights were violated where he was prevented from introducing Sheppard's statements regarding her lineup identification. (Dkt. 1, p. 22.) He invokes the Supreme Court's decision in *Chambers v. Mississippi*, 410 U.S. 284 (1973), arguing the trial court's ruling on Sheppard's double-hearsay affidavit deprived him of his right to present a complete defense because he was barred from introducing exculpatory evidence. *Id.*

The issue of Sheppard's hearsay statements was last addressed on the merits by the state appellate court on direct review, making it the relevant decision for this Court's consideration. *See Morris*, 2015 IL App (1st) 140846-U, ¶¶ 76-86.

41

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a 'meaningful opportunity to present a complete defense.'" *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (citing *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)). This right is not unfettered; "the accused, as is required of the State, must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). In some instances, however, strict application of a state evidentiary rule must yield to the defendant's fundamental due process right to present a defense. *Id.* ("where constitutional rights directly affecting the ascertainment of guilt are implicated, the hearsay rule may not be applied mechanistically to defeat the ends of justice").

In *Chambers*, the Supreme Court addressed whether a murder defendant's due process rights were violated when he was not allowed to introduce evidence of, nor call as an adverse witness, a man named McDonald who had confessed to the murder on four separate occasions— once in a sworn statement to defendant's counsel (which he later repudiated), and three times in private conversations with friends. 410 U.S. at 285-90. The Supreme Court answered this question in the affirmative, holding the combination of the state's "voucher rule," which barred parties from impeaching their own witnesses, and the state's hearsay rule, which provided an exception only for statements against pecuniary (not penal) interests, resulted in the exclusion of testimony that "was critical to Chambers' defense." *Id.* at 295-303.

Although the statements were hearsay, explained the Supreme Court, they were "made and subsequently offered at trial under circumstances that provided considerable assurance of their

42

reliability." *Id.* at 300. The *Chambers* Court identified four factors highlighting the statements' trustworthiness: (1) the confessions were made spontaneously to a close acquaintance shortly after the murder; (2) each confession was corroborated by other evidence; (3) the confessions were self-incriminatory and against McDonald's interest; and (4) McDonald was available for cross-examination. *Id.* at 300-01. Based on "the[se] facts and circumstances," the Supreme Court held the trial court's evidentiary rulings "deprived Chambers of a fair trial." *Id.* at 303.

Since *Chambers*, the Supreme Court has considered a number of cases challenging the exclusion of defense evidence under state evidentiary rules. *Kubsch v. Neal*, 838 F.3d 845, 855-58 (7th Cir. 2016) (collecting cases). The general standard from these cases is that "rules of evidence restricting the ability to present a defense cannot be 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Caffey v. Butler*, 802 F.3d 884, 895-96 (7th Cir. 2015) (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998)); *see also Kubsch*, 838 F.3d at 858. "The exclusion of hearsay transgresses that standard only where the excluded statements: (1) bear 'considerable assurance of their reliability,' sufficient to compensate for not being subject to cross-examination or given under oath; and (2) are 'critical' to the defense." *Caffey*, 802 F.3d at 896 (quoting *Chambers*, 410 U.S. at 299-300, 302).

In Petitioner's case, the state appellate court determined the proffered evidence was double hearsay because Sheppard's out-of-court statement regarding her lineup identification was offered for its truth and was related by way of an affidavit. *Morris*, 2015 IL App (1st) 140846-U, ¶ 80. No hearsay exception permitted the introduction of Sheppard's statement under Illinois's evidentiary rules, nor were her statements admissible under the state's criminal procedure provision providing

for circumstances under which a deceased witness's hearsay statements may be admissible when no hearsay exception applies. *Id.* at ¶ 81 (citing 725 ILCS 5/115-10.4).

The state appellate court further concluded that the exclusion of Sheppard's hearsay statement did not violate Petitioner's constitutional rights. Applying *Chambers*, the state court considered the four factors identified by the Supreme Court and determined that, even though *Chambers*'s first two factors were satisfied (Sheppard's statements were spontaneously made to her husband a few days after the shooting, and her statement could be corroborated by other evidence[12]), the third and fourth factors were not present (the statements were not against Sheppard's interests, nor subject to cross-examination). *Morris*, 2015 IL App (1st) 140846-U, ¶¶ 82-85. The state appellate court found the lack of opportunity for cross-examination particularly significant, explaining—

> To give an example of why we believe cross-examination would have been so important in this case, we note that Sheppard's husband, Jack Spinks, also allegedly identified someone other than [Petitioner] in the lineup. On cross, the State elicited that Spinks could not see the offender's face at the time of the crime and that when he went to the police station to view the lineup, he did not think he would be able to identify the offender. Had the State had an opportunity to cross-examine Sheppard, it is possible that it would have been able to similarly undermine her lineup identification.

*Id.* at ¶ 85.

Because there was no "considerable assurance" that Sheppard's identification was reliable, the state appellate court found no *Chambers* error. *Id.* This conclusion was not "contrary to" clearly

---

12 In finding the second factor satisfied, the state appellate court chose to give Petitioner "the benefit of the doubt" based on Petitioner's offer of proof at trial that Sheppard's statement would be corroborated by her husband, the unnamed police officer who visited her after the lineup, and the officers who conducted the lineup. *Morris*, 2015 IL App 140846-U, ¶84 ("We will consider this offer of proof sufficient to satisfy the second *Chambers* factor.").

established federal law, as the state appellate court correctly identified and applied the controlling legal standard. Equally, the state appellate court's conclusion was not unreasonable.

It is true the four factors recognized by the *Chambers* Court to test for reliability and trustworthiness are neither exhaustive nor absolute. *Cunningham v. Peters*, 941 F.2d 535, 540 (7th Cir. 1991) (citing *Sharlow v. Israel*, 767 F.2d 373, 377 (7th Cir. 1985)). The state appellate court acknowledged this in Petitioner's case. *Morris*, 2015 IL App (1st) 140846-U, ¶¶ 82, 85. But the absence of the third and fourth factors, concluded the state appellate court, weighed too heavily against a finding of reliability as to Sheppard's identification. *Id.* at ¶ 85. This ruling was neither "lacking in justification," nor "beyond any possibility for fairminded disagreement." *Makiel*, 782 F.3d at 896 (citing *Harrington*, 562 U.S. at 103).

Unlike the challenged confession in *Chambers*, Sheppard's statement neither incriminated her, nor exculpated Petitioner. *See* 410 U.S. at 297 ("To the extent that McDonald's sworn confession tended to incriminate him, it tended also to exculpate Chambers."). Rather, her identification, like her husband's, would have simply aided Petitioner's theory of mistaken identity. Of course, whether the jury accepted this theory would depend on whether Sheppard's identification was reliable. But because there was no opportunity for cross-examination, the reliability of her statement could not be tested.

"The availability of cross-examination was ... central to *Chambers*." *Caffey*, 802 F.3d at 898 (internal quotation marks and citation omitted). Because McDonald was available for trial, the "truthfulness of the extrajudicial statements" could be tested, and "his demeanor and responses weighed by the jury." *Chambers*, 410 U.S. at 301 (characterizing McDonald's availability for cross-examination as a "significant[] distin[ction]" from other precedent).

45

Spinks's testimony revealed how critical cross-examination was to the identifications in Petitioner's case. Spinks and Sheppard both identified a filler in the lineup. Through cross-examination, however, it was revealed that Spinks's identification suffered from serious flaws—he was not able to see the shooter's face; he saw only the offender's hand shoving the murder weapon into his pocket. Sheppard's identification could not be subjected to similar testing. Unlike Spinks, she was unavailable to testify as to her view of the shooter, from where and for how long, and her level of certainty as to her identification. *See Neil v. Biggers*, 409 U.S. 188, 199-200 (1972) (listing factors to consider in evaluating the likelihood of misidentification). It was thus reasonable for the state appellate court to conclude that Sheppard's affidavit lacked the degree of reliability "sufficient to compensate for not being subject to cross-examination." *Caffey*, 802 F.3d at 896.

Additionally, Petitioner cannot meet *Chambers*'s "criticalness" prong.[13] "Critical" in the *Chambers* context means that the excluded evidence is both "favorable and material[;]" in other words, "there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact." *Id.* (quoting *United States v. Valenzuela-Bernal*, 458 U.S. 858, 872-74 (1982)) (internal quotation marks omitted). Petitioner sought to introduce Sheppard's identification both as a way to bolster his misidentification theory and to impeach the officers for bias. (Dkt. 21-20, p. 9.) But as the Seventh Circuit has explained, successful *Chambers* challenges involve evidence that is "essential—not just possibly helpful—to the defendant's ability to present a defense[,]" and "[p]ossibly impeaching evidence generally will not meet this test." *Hinkle v. Neal*, 51 F.4th 234, 246 (7th Cir. 2022) (citing *Kubsch*, 838 F.3d at 858) (internal quotation marks omitted).

---

13  Because the state appellate court resolved Petitioner's claim on *Chambers*'s reliability prong and did not consider criticalness, the Court considers the issue *de novo*. *Caffey*, 802 F.3d at 898.

Nor would Sheppard's statement have undermined the other powerful evidence against Petitioner. The case against Petitioner consisted of eyewitness testimony, physical evidence, and inculpatory statements:

- Binns testified that he observed Petitioner enter the victim's car, heard the gunshots, and saw Petitioner's face as he fled the scene. He identified Petitioner as the culprit in a lineup, at the grand jury proceedings, and at trial;

- Senese testified that there were almost 90 points of comparison between the fingerprints found on the exterior of the passenger-side door of the victim's vehicle and Petitioner's pinky, ring, and middle fingers; and

- Detective Erickson testified that Petitioner asked how the old man was doing without having been provided the victim's details, and stated it wasn't cold-blooded after being informed the victim had been shot.

There is no reasonable probability that Sheppard's affidavit would have altered the outcome of trial.[14] Claim 3(e) is without merit and denied.

### 3. Petitioner's Challenge to the Sufficiency of the State's Evidence (Claims 6 and 7)

Finally, Petitioner challenges the sufficiency of the State's evidence. (Dkt. 1, p. 23.) He claims the evidence was insufficient to prove beyond a reasonable doubt that he was the individual responsible for the crimes because: (1) Binns's identification was unreliable; (2) Petitioner's fingerprints were found only on the exterior of the victim's passenger-side door and could have been left there at any time; and (3) Petitioner's inculpatory remarks to Detective Erickson were not reduced to a written statement, nor video recorded.[15] *Id.* at 23-27.

---

14 Because Petitioner cannot establish *Chambers*'s criticalness prong, he cannot demonstrate harmless error under *Brecht*. *See Caffey*, 802 F.3d at 898 (the materiality component of *Chambers*'s criticalness prong "sets a higher bar than *Brecht*…").

15 As explained above, it is clear from Petitioner's pleadings and the state court record that, although Petitioner divided his sufficiency challenging into two claims (Claims 6 and 7), the challenge should be treated as a single claim.

As discussed above, the merits of Petitioner's sufficiency challenge were last addressed by the state appellate court in postconviction proceedings, *Morris*, 2020 IL App (1st) 162723-U, ¶¶ 29-40, making this decision the relevant state court opinion for this Court's consideration.

The Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307 (1979), governs Petitioner's sufficiency challenge. Under *Jackson*, the "evidence is constitutionally sufficient if, 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Anderson v. Brookhart*, 19 F.4th 980, 982 (7th Cir. 2021) (quoting *Jackson*, 443 U.S. at 319) (emphasis in original).

The Supreme Court has made clear that "*Jackson* challenges face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam). First, a reviewing court may only set aside a jury conviction on sufficiency grounds "if no rational trier of fact could have agreed with the jury." *Id.* (quoting *Cavazos v. Smith,* 556 U.S. 1, 2 (2011) (per curiam)); *Cavazos*, 565 U.S. at 2 ("it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from the evidence admitted at trial"). Second, the state court's rejection of a sufficiency challenge may not be overturned "simply because the federal court disagrees with the state court." *Coleman*, 566 U.S. at 651 (citing *Cavazos*, 565 U.S. at 2). Rather, the state court decision may only be overturned if it was "objectively unreasonable." *Id.*

On postconviction appeal, Petitioner's sufficiency challenge contested only his identification as the shooter. *Morris*, 2020 IL App (1st) 162723-U, ¶ 31. Applying the correct legal

standard, the state appellate court concluded that "viewing the evidence in the light most favorable

to the State, … a rational trier of fact could have found beyond a reasonable doubt that [Petitioner]

committed the offenses at issue." *Id.* at ¶ 32.[16] The state court rejected Petitioner's arguments

regarding the fingerprint evidence and his incriminatory statements, explaining—

> While [Petitioner] notes that his experts challenged the State's fingerprint evidence,
> and claims Erickson's testimony regarding the inculpatory statement was
> uncorroborated, his arguments are, essentially, a request to reweigh the evidence
> presented at trial in his favor and substitute our judgment for that of the trier of fact.
> This we cannot do.

*Id.* at ¶ 33.

Additionally, the state appellate court, applying the *Biggers* factors,[17] concluded Binns's

identification of Petitioner was not "so unreliable that there exists a reasonable doubt as to

[Petitioner's] guilt." *Id.* at ¶¶ 33-39. Specifically, the court noted Binns's attentiveness to the

parking lot at the time of the shooting, his unobstructed view of Petitioner as he passed the currency

exchange, and that he identified Petitioner from a lineup only 18 days later and maintained this

identification through trial. *Id.* at ¶¶ 36-39.

The state appellate court's resolution of Petitioner's sufficiency challenge was neither

contrary to, nor an unreasonable application of, *Jackson*. As to the fingerprint evidence and

incriminatory statements, Petitioner challenged this evidence at trial through expert witness

testimony that a smudge from what appeared to be a glove may have been left on the victim's

---

16 That the state appellate court cited to a state court case instead of federal cases is of no consequence as the state court need not cite to or even be aware of the relevant federal cases as long as the state court identifies the proper standard as was done in this case. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam).

17 In *Biggers*, the Supreme Court established factors to be considered in evaluating whether an identification is reliable where the police identification procedures are impermissibly suggestive. *Biggers*, 409 U.S. at 199-200. Illinois applies the *Biggers* factors when considering whether eyewitness identification is reliable as a general principle regardless of whether there is a questionable police identification procedure. *See Illinois v. Stanley*, 921 N.E.2d 445, 455 (Ill. App. Ct. 2009).

vehicle sometime after the three fingerprints belonging to Petitioner, and through the ASA's testimony that her short summary of the case for the bond hearing did not include Petitioner's inculpatory statements made to Detective Erickson. It was the responsibility of the jury to weigh this competing evidence, from which they could have reasonably credited the testimony of the State's witnesses, forensic expert Senese and Detective Erickson, over Petitioner's. *See Jackson*, 443 U.S. at 319 ("[Our] familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.").

As to Binns's identification, "his testimony," alone, "would be legally sufficient to convict" Petitioner. *Jones v. Butler*, 778 F.3d 575, 582 (7th Cir. 2015) (citing *Hayes v. Battaglia*, 403 F.3d 935, 938 (7th Cir. 2005) (stating that the "testimony of a single eyewitness suffices for conviction even if 20 bishops testify that the eyewitness is a liar"). Binns's identification was not only sufficiently reliable, as the state appellate court concluded, but it was also corroborated by the physical evidence. Binns observed Petitioner enter and exit the victim's vehicle through the passenger-side door, and that is where Petitioner's fingerprints were found. Coupled with Petitioner's own incriminating statement that the shooting was not "cold-blooded," this evidence was more than sufficient for a reasonable jury to find beyond a reasonable doubt that Petitioner was the individual responsible for the attempted armed robbery and murder of the victim. Petitioner's sufficiency challenge is without merit. Claims 6 and 7 are denied.

For the reasons above, Petitioner is not entitled to federal habeas corpus relief as his claims are either procedurally defaulted or meritless. Additionally, the Court denies Petitioner's request for an evidentiary hearing on Akerele's and Hendricks's affidavits. (Dkt. 24, p. 10.) "[A]n

evidentiary hearing is warranted if the facts underlying [Petitioner's] claim could establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found him guilty." *Coleman v. Hardy*, 628 F.3d 314, 322-23 (7th Cir. 2010) (citing 28 U.S.C. § 2254(e)(2)(B)). The record before the Court shows that Petitioner is entitled to no relief.[18] *Moreland v. Eplett*, 18 F.4th 261, 272 (7th Cir. 2021). The habeas corpus petition is denied.

## III. Notice of Appeal Rights and Certificate of Appealability

Petitioner is advised that this is a final decision ending his case in this Court. If Petitioner wishes to appeal, he must file a notice of appeal with this Court within 30 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). Petitioner need not bring a motion to reconsider this Court's ruling to preserve his appellate rights. However, if Petitioner wishes the Court to reconsider its judgment, he may file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). Any Rule 59(e) motion must be filed within 28 days of the entry of this judgment. *See* Fed. R. Civ. P. 59(e). The time to file a motion pursuant to Rule 59(e) cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A timely Rule 59(e) motion suspends the deadline for filing an appeal until the Rule 59(e) motion

---

18 To the extent Petitioner requests oral argument on Respondent's alleged non-compliance with Rule 5(c) of the Rules Governing Section 2254 Cases in the United States District Courts, (Dkt. 24, p. 1-3), his request is denied. Petitioner contends Respondent failed to comply with Rule 5(c)'s requirement that "[t]he respondent must attach to the answer parts of the transcript that the respondent considers relevant." (Dkt. 24, p. 1.) The docket shows that Respondent sent to Petitioner a document listing the exhibits included with the state court record, but it is unclear whether the relevant exhibits were likewise sent. (Dkt. 21.) Petitioner contends they were not. (Dkt. 24, p. 3.)

Petitioner is correct that compliance with the rules and procedures governing habeas corpus proceedings is required of all parties. The failure to do so is not taken lightly by this Court. But habeas corpus relief is available only for constitutional violations. 28 U.S.C. § 2254(a). Non-compliance with the Rules Governing Section 2254 Cases is not such an error. In any event, Petitioner was not prejudiced by the omission of any attachments. Petitioner claims the attachments were necessary for him to "better understand what issues" Respondent "considers relevant," but his reply brief demonstrates a comprehensive understanding of Respondent's procedural default and merits arguments, and replies to each accordingly. Any non-constitutional, procedural error by Respondent would be considered harmless. *See Bishop v. United States*, No. 3:17-CR-55 RLM, 2019 WL 3531264, at *5 (N.D. Ind. July 31, 2019).

51

is ruled upon. *See* Fed. R. App. P. 4(a)(4)(A)(iv). Any Rule 60(b) motion must be filed within a reasonable time and, if seeking relief under Rule 60(b)(1), (2), or (3), must be filed no more than one year after entry of the judgment or order. *See* Fed. R. Civ. P. 60(c)(1). The time to file a Rule 60(b) motion cannot be extended. *See* Fed. R. Civ. P. 6(b)(2). A Rule 60(b) motion suspends the deadline for filing an appeal until the Rule 60(b) motion is ruled upon only if the motion is filed within 28 days of the entry of judgment. *See* Fed. R. App. P. 4(a)(4)(A)(vi).

The Court declines to issue a certificate of appealability. Such a certificate "may not issue 'unless the applicant has made a substantial showing of the denial of a constitutional right'" or error with this Court's procedural determinations. *Slack v. McDaniel*, 529 U.S. 473, 483 (2000) (quoting 28 U.S.C. § 2253(c)). Petitioner must show that reasonable jurists could debate whether this Court should have resolved his claims differently or that the issues are "adequate to deserve encouragement to proceed further." *Arredondo v. Huibregtse*, 542 F.3d 1155, 1165 (7th Cir. 2008) (citing *Slack*, 529 U.S. at 484) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Petitioner cannot meet this standard.

## IV.    Conclusion

Petitioner's habeas corpus petition (Dkt. 1) is denied. Any other pending motions are denied as moot. The Court declines to issue a certificate of appealability. The Clerk is instructed to: (1) correct the docket to reflect that Respondent's name is Anthony Wills, and (2) enter a judgment in favor of Respondent and against Petitioner. Civil Case Terminated.

ENTERED:

Dated: April 18, 2023

_____
THOMAS M. DURKIN
United States District Judge

52